FILED

2015 JUL -7 PM 3:25

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Jacksonville Division

THOMAS JAMES COVENANT, an individual, and JEFFREY MARCUS GRAY, an individual,

Plaintiffs,

v.

MARK HARRISON MAHON, in his official capacity as Chief Judge of the Fourth Judicial Circuit of Florida, and MIKE WILLIAMS, in his official capacity as the Sheriff of Jacksonville, Duval County, Florida,

Defendants.

Case No. 3:15-cv-845-J-32JBT

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

**COME NOW** the Plaintiffs, THOMAS JAMES COVENANT ("Mr. Covenant") and JEFFREY MARCUS GRAY ("Mr. Gray") (collectively, the "Plaintiffs"), by and through their undersigned Counsel, and respectfully file the following memorandum of law in support of their Motion for Temporary Restraining Order.

## I. PLAINTIFFS HAVE STANDING AND DEFENDANTS ARE AMENDABLE TO SUIT FOR PROSPECTIVE RELIEF

Plaintiffs have standing to challenge Administrative Order 2015-3 ("AO 2015-3"), because they have suffered and continue to suffer injuries in fact. Because Defendants' issuance and enforcement of AO 2015-3 caused and continue to cause Plaintiffs injuries, the remedy Plaintiffs seek would redress the injuries. *See Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Because Defendants have effectively censored Plaintiffs' core political speech and stripped them of their constitutional right to photograph public officials, Plaintiffs' injuries are both real and immediate, not conjectural or hypothetical. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 102 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Indeed, if Plaintiffs were to engage in either of these First Amendment activities, Plaintiffs are sure to be arrested, pursuant to AO 2015-3.

In *Huminski v. Corsones*, the U.S. Court of Appeals for the Second Circuit observed the following about State defendants in section 1983 lawsuits:

> "[N]either a State nor its officials acting in their official capacities are 'persons' under [42 U.S.C.]§ 1983." *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).15 Therefore, state officials cannot be sued in their official capacities for retrospective relief under section 1983. *See id.* **Nonetheless, state officials can be subject to suit in their official capacities for injunctive or other prospective relief.** *Id.* at 71 n. 10, 109 S.Ct. 2304.
>
> [. . .]
>
> On the other hand, "local government officials sued in their official capacities are 'persons' under [42 U.S.C.] § 1983 in those cases in which . . . a local government would be suable in its own

> name." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55, 98 S.Ct. 2018, 56 L.Ed.2d 611(1978).

396 F.3d 53, 70 (2d Cir. 2004) (emphasis added).

Plaintiffs have alleged and established that Chief Judge Mahon issued AO 2015-3, and that officers subject to the authority of Sheriff Williams have enforced AO 2015-3. Because Plaintiffs seek prospective relief against further enforcement of AO 2015-3, Defendants are both amenable to suit and properly named as defendants herein.

## II. PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS OF THEIR CLAIMS, BECAUSE ON ITS FACE, AO 2015-3 VIOLATES THE FIRST AND FOURTEENTH AMENDMENTS

### A. First Amendment

#### 1. Overbreadth

By its own language, AO 2015-3 is directed principally at "expressive conduct". *See* AO 2015-3, at p. 7, ¶ 6. Because AO 2015-3 is therefore a pure content-based restriction on speech, strict scrutiny applies. *See Burroughs v. Corey*, --- F.Supp.3d ---, case no. 3:14-cv-33-J-32MCR, 2015 WL 685705, at *3 (M.D. Fla. Mar. 25, 2015). Because AO 2015-3 serves no compelling governmental interest, and alternatively because it is not narrowly tailored to any purportedly compelling interest, AO 2015-3 fails the strict scrutiny test.

Alternatively, if the Court were to find that AO 2015-3 is primarily directed toward conduct, the Court would still "look to the order's potential applications,

determine which are legitimate and which are potentially unconstitutional, and see if there are a substantial number of unconstitutional applications in relation to legitimate ones." *Burroughs*, 2015 WL 685705, at *3. Even if the Court were to engage in this analysis, the Court would still find that there are virtually no constitutional applications of AO 2015-3.

2. Prior Restraint

"The term prior restraint is used 'to describe administrative and judicial orders *forbidding* certain communications when issued in advance of the time that such communications are to occur.'" *Alexander v. U.S.*, 509 U.S. 544, 550, 113 S.Ct. 2766, 2771, 125 L.Ed.2d 441 (1993) (quoting M. Nimmer, Nimmer on Freedom of Speech § 4.03, p. 4-14 (1984) (emphasis added in *Alexander v. U.S.*)). Because AO 2015-3 prohibits expressive activity before it occurs, it is a prior restraint. *See U.S. v. Frandsen*, 212 F.3d 1231, 1236-37 (11th Cir. 2000). "Although prior restraints are not *per se* unconstitutional, there is a strong presumption against their constitutionality. *Id.* at 1237; *see Burk v. Augusta-Richmond Cty.*, 365 F.3d 1247, 1251 (11th Cir. 2004) ("Prior restraints are presumptively unconstitutional and face strict scrutiny.").

AO 2015-3 is extraordinary in that it is not only a content-based prior restraint on speech, but it targets only one viewpoint for censorship. If two competing groups of protestors were to protest and demonstrate on the grounds of

the Duval County Courthouse, with one group holding signs that extol the integrity and virtues of the Courts and Court personnel, while the competing group is holding signs claiming that the Courts and Court personnel are "biased, dishonest, partial, or prejudiced", *see* AO 2015-3, at p. 6, ¶ 3, only the latter group would be subject to arrest for criminal contempt. This alarming abrogation of First Amendment protections – protections that are at their apex in the context of core political speech – cannot survive any judicial scrutiny.

Plaintiffs desire to demonstrate and protest with the latter group in the example above, but they have been silenced by Defendants' stunning issuance and enforcement of AO 2015-3. In *Terminiello v. City of Chicago*, the U.S. Supreme Court observed the following about the extent of First Amendment protections:

> [A] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. Speech is often provocative and challenging. It may strike at prejudices and preconceptions and have profound unsettling effects as it presses for acceptance of an idea. That is why freedom of speech, though not absolute, is nevertheless protected against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest. There is no room under our Constitution for a more restrictive view. For the alternative would lead to standardization of ideas either by legislatures, courts, or dominant political or community groups.

337 U.S. 1, 4-5, 69 S.Ct. 894, 896, 93 L.Ed. 1131 (1949) (citations omitted).

3. Photography of Public Officials and Buildings

"The First Amendment protects the right to gather information about what public officials do on public property, and specifically, a right to record matters of public interest." *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) (citing numerous cases upholding First Amendment right to photograph and videotape public meetings, matters of public interest, and other events and matters). The First Amendment has even been held to protect the photography of an undercover police. *See Williamson v. Mills*, 65 F.3d 155 (11th Cir. 1995).

AO 2015-3's absolute prohibition of videotaping "secure locations" on the Duval County Courthouse grounds cannot be reconciled with the First Amendment. Additionally, Plaintiffs have been unfairly singled-out for arbitrary enforcement of this provision, insofar as the entire exterior of the Duval County Courthouse is viewable via Google Maps[1] and several other publicly available sources – replete with detailed photographs of all conceivable external and photograph-able "security systems", whatever meaning that term is intended to convey. In any event, the benefit of AO 2015-3's prohibition of videotaping the Courthouse (if any) is substantially outweighed by the injury caused by Plaintiffs' loss of First Amendment rights.

---

[1] *See, e.g.,* https://www.google.com/maps/@30.330385,-81.664562,3a,75y,106.93h,85.04t/data=!3m6!1e1!3m4!1sVkWiMePel8eC_iYO_P_KPA!2e0!7i13312!8i6656
and
https://www.google.com/maps/@30.329789,-81.66228,3a,75y,312.6h,83.92t/data=!3m6!1e1!3m4!1sjQTDnX0CoUuMMWfiP-N9pg!2e0!7i13312!8i6656

B. Fourteenth Amendment – Vagueness

AO 2015-3 is unconstitutionally vague, as the conduct it purports to prohibit is not clearly defined. As the United States Supreme Court has noted:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute "abut[s] upon sensitive areas of basic First Amendment freedoms," it "operates to inhibit the exercise of [those] freedoms." Uncertain meanings inevitably lead citizens to "'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked."

*Grayned v. City of Rockford*, 408 U.S. 104, 108-9 (U.S. 1972) (internal citations omitted).

AO 2015-3 prohibits "Demonstrations or dissemination of materials that degrade or call into question the integrity of the court" and "[d]emonstrations that unreasonably disrupt, disturb, interrupt, or interfere with the impartial and orderly conduct of the judiciary, or that of JSO[2] or other security officers [...]" *See* AO 2015-3, p. 6. However, the terms "degrade," "call into question," "disrupt,"

[2] Jacksonville Sheriff's Office (hereinafter, "JSO")

"disturb," "interrupt," and "interfere" are defined nowhere in the Order. Such lack of clarity in what precise conduct is prohibited renders the Order fatally vague.

Moreover, such lack of clarity opens the Order to "*ad hoc*" interpretation and enforcement, as JSO officers are free to subjectively (and arbitrarily) interpret and punish expressive conduct without basic safeguards. Security officials are free to determine speech that "denigrates" judges constitutes criminal contempt, without consideration of discrete, identifiable behavior necessary to conclude actual criminal activity has occurred. Essentially, interpretation and enforcement are left up to the unfettered discretion of JSO officers, who are ordered to determine what "offensive" behavior or speech is criminal.

Finally, the Order will undoubtedly have a substantial chilling effect on the exercise of free speech and expression. As Plaintiffs are unsure of what activities will be punished, they will be forced to "steer far wider of the unlawful zone" to avoid potential consequences. *Grayned* at 109. Such caution will inevitably restrict the "permissible" boundaries of speech allowed by AO 2015-3, as Plaintiffs (and any other individuals wishing to engage in lawful expression of their concerns within the area proscribed by the Order) self-censor to avoid punishment. As AO 2015-3 is, by its own terms, a content-based regulation of speech, such concern is substantially heightened. *See Reno v. ACLU*, 521 U.S. 844, 871-872 (U.S. 1997).

## III. ABSENT A TEMPORARY RESTRAINING ORDER, PLAINTIFFS WILL SUFFER IRREPARABLE HARM

The deprivation of rights guaranteed under the First Amendment is an irreparable injury as a matter of law. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Inasmuch as Plaintiff alleges that she is threatened with the loss of First Amendment rights, irreparable injury is presumed. *Cate v. Oldham*, 707 F.2d 1176, 1188 (11th Cir. 1983) ("It is well settled that the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a preliminary injunction.") (*quoting Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)).

## IV. PLAINTIFFS WOULD SUFFER SUBSTANTIALLY MORE INJURY WITHOUT A TEMPORARY RESTRAINING ORDER THAN DEFENDANTS WOULD SUFFER BY THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER

As a matter of law, the harm to Plaintiff is irreparable. "The loss of First Amendment freedoms . . . constitutes irreparable injury justifying the granting of a preliminary injunction." *Howard v. City of Jacksonville*, 109 F. Supp. 2d 1360, 1365. (M.D. Fla. 2000). In contrast, Defendants will not suffer any harm if the Court issues the requested temporary restraining order.

## V. THE PUBLIC INTEREST WOULD BE SERVED BY THE ENTRY OF A TEMPORARY RESTRAINING ORDER

The public interest is served by the maintenance of freedoms secured by the Bill of Rights. On the other hand, the public interest could not possibly be served

by the enforcement of a patently unconstitutional administrative order that targets a particular political viewpoint for censorship.

**WHEREFORE**, Plaintiffs respectfully request the following:

(a) the entry of a temporary restraining order, enjoining the enforcement of AO 2015-3,

(b) the issuance of an order to show cause why a preliminary injunction should not be granted to maintain the status quo during the pendency of this action, and

(c) such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted July 7, 2015, by:

**The Bonderud Law Firm, P.A.**

*/s/ Andrew Bonderud*
Andrew M. Bonderud, Esq.
Florida Bar No. 102178
TRIAL COUNSEL
814 A1A North, Suite 202
Ponte Vedra Beach, FL 32082
904-438-8082 (telephone)
904-800-1482 (facsimile)
E-Mail: BonderudLaw@gmail.com
*Attorney for Plaintiffs*